UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:08-CV-1433 CAS ) |
| ST. JOHNS BANK & TRUST COMPANY, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This diversity action arising from an insurance dispute is before the Court on plaintiff Commonwealth Land Title Insurance Company's ("Commonwealth") Motion to Disqualify counsel for defendant St. Johns Bank & Trust Company ("St. Johns"). St. Johns opposes the motion and it is fully briefed. For the following reasons, the Court will grant the motion and disqualify the law firm of Polsinelli Shughart P.C. from representing St. Johns in this matter.

**Background**

Commonwealth is a title insurance company. It issued a mortgagee policy of title insurance (the "Policy") to St. Johns in connection with a deed of trust St. Johns obtained on three parcels of real property (the "Property") as security for a $650,000 loan St. Johns made to non-party Summit Pointe, L.C. ("Summit") in January 2005. In April 2005, Summit obtained an $8 million loan from Premier Bank and gave that bank a deed of trust lien on the one of the three parcels that comprise the Property. In December 2006, St. Johns agreed to increase the amount of its loan to Summit to $3 million, and St. Johns and Summit modified the original deed of trust to give St. Johns a deed of trust lien on the Property as security for the modified loan. In January 2007, Commonwealth issued

an endorsement to the Policy, increasing its coverage to $3 million. In March 2008, St. Johns made a claim under the Policy for damage as a result of the deed of trust lien held by Premier Bank, as Summit was in default on its loan.

Commonwealth filed this action for declaratory judgment in September 2008. Although Commonwealth admits it has liability to St. Johns under the Policy, there is a dispute between the parties as to how the amount of loss is to be calculated. Commonwealth seeks declarations regarding (1) the fair market value of the Property; (2) the amount of loss under the Policy; and (3) the parties' respective rights and liabilities under the Policy. St. Johns filed counterclaims for breach of insurance contract, statutory vexatious refusal to pay, negligence, and declaratory judgment.

**Facts Relevant to Disqualification**

Commonwealth filed this motion to disqualify St. Johns' counsel, the law firm of Polsinelli Shughart PC ("Polsinelli Shughart"), on the basis that Polsinelli Shughart has previously represented and continues to represent Commonwealth and its sister companies and their insureds in several active matters. Commonwealth asserts that Polsinelli Shughart's its representation of St. Johns in this matter, adverse to Commonwealth, is a direct conflict of interest in violation of Missouri law.

In its motion, Commonwealth states the following facts concerning the alleged conflict. At the time St. Johns made its claim under the Policy, it was represented by Michael Campbell ("Mr. Campbell") of the firm Polsinelli Shalton Flanigan & Suelthaus PC (the "Polsinelli firm"). Mr. Campbell of the Polsinelli firm appeared and answered on behalf of St. Johns on October 24, 2008.

In early February 2009, the Polsinelli firm and Shughart Thomson & Kilroy, PC (the "Shughart firm") merged to become Polsinelli Shughart PC. John Cleary ("Mr. Cleary"), a partner

2

in the Shughart firm, has represented Commonwealth and its related companies for many years.[1] In addition to defending claims against Commonwealth, Mr. Cleary has also been retained by Commonwealth to defend its insureds. Mr. Cleary recently acted as counsel for Commonwealth in First Magnus Financial Corp. v. Summit Mortgage, L.L.C., et al., a complex, multi-party mortgage fraud case filed in federal court in Kansas City. Commonwealth states that its current counsel acted as lead counsel for Commonwealth in that case; Mr. Cleary sponsored the requisite motions for admission pro hac vice.

Mr. Cleary and other partners in what is now Polsinelli Shughart have represented Commonwealth and its sister companies in at least the following matters in recent years: Commonwealth Land Title Insurance Co. v. Kearney Commercial Bank (Western District of Missouri); Williams v. Commonwealth Land Title Insurance Co. (District of Kansas); Larry Brown Excavating Inc. v. Derek Allen Custom Homes, et al. (Clay County, Missouri); Ray v. Taylor Bean and Whitaker Mortgage Corp., et al., (Jackson County, Missouri); GAAA Corp. v. Bax Engineering Co., et al. (pending in St. Charles County, Missouri); Chicago Title Insurance Co. v. Hanson (Platte County, Missouri and Western District Court of Appeals); and Chicago Title Insurance Co., et al. v. Reeves (Clay County, Missouri).

Commonwealth asserts that it became a client of Polsinelli Shughart as a result of the law firms' merger and, separate and apart from the matters listed above, Mr. Cleary continues to represent

---

[1] Commonwealth is a title insurance underwriter affiliated with Fidelity National Financial Group ("Fidelity"), a holding company which owns, directly or indirectly, a number of related companies, including Lawyers Title Insurance Corporation, Transnation Title Insurance Company, Chicago Title Insurance Company, and Alamo Title Insurance Company (collectively the "Fidelity companies"), among others. The retention of outside counsel for Commonwealth, the Fidelity companies, and their insured policyholders is handled by Fidelity's in-house counsel, who manage and supervise the defense of those claims in a centralized manner.

Commonwealth and its related companies, or their insureds, in multiple active matters. Polsinelli Shughart was hired by Commonwealth's sister company Lawyers Title Insurance Corporation to represent its insured policyholder in AmTrust Bank v. Karr, a case pending in Osage County, Kansas. Mr. Cleary is lead counsel. In addition, Commonwealth's sister company Chicago Title Insurance Company retained Polsinelli Shughart to represent its insured policyholders in Gaddo, Inc. v. Cook County Tax Resources, a case pending in Cook County, Illinois.

Commonwealth was acquired by holding company Fidelity National Title Group ("Fidelity") in December 2008. Based on the affidavits of Tara B. Van Rooy, Vice President and Major Claims Counsel for Fidelity, it is undisputed that in-house claims counsel employed by Fidelity have responsibility for managing claims of multiple Fidelity companies and their insureds. As a result, the pre-litigation claims-handling policies and procedures are the same for a claim made by one of Commonwealth's insured policyholders (e.g., St. Johns) as for a claim made by an insured holding a policy underwritten by sister companies Lawyers Title or Chicago Title.[2] Therefore, a lawyer with knowledge of the claims-handling policies and procedures for Chicago Title by definition has knowledge of Commonwealth's claims-handling policies and procedures. In addition, the Fidelity companies have an understanding that their outside counsel will avoid representation adverse to Fidelity's various affiliates unless a waiver is previously obtained.

Fidelity's in-house claims counsel are responsible for retaining outside counsel and managing litigation involving multiple Fidelity companies and their insureds, according to a common set of established procedures and practices. Fidelity provides its outside counsel with Attorney Litigation

---

[2] Prior to its acquisition by Fidelity, Commonwealth, Lawyers Title, and Transnation were affiliates of LandAmerica Financial Group, Inc., which also handled claims and lawsuits in a centralized manner.

Guidelines that define the respective roles and responsibilities of in-house and retained outside counsel. The Guidelines are not specific to any one of the Fidelity companies, but rather apply to cases involving (1) defense of litigation challenging a Fidelity company's insured policyholder's title; (2) defense of a Fidelity company in a lawsuit filed by an insured policyholder; (3) representation of a Fidelity company in a declaratory judgment action to determine its liability to its insured; or (4) prosecution of a Fidelity company's subrogation rights. Therefore, outside counsel retained to defend a claim against one of Commonwealth's insured policyholders by definition have knowledge of the litigation practices of all of the Fidelity companies.

Commonwealth states that Polsinelli Shughart did not inform Commonwealth of the conflict created when the firms merged. Instead, Commonwealth discovered the conflict on its own several months later. After conducting legal research and concluding that a concurrent conflict of interest exists, Commonwealth's counsel brought the matter to Mr. Campbell's attention on May 13, 2009. Commonwealth states that in light of the pending mediation, which at the time was scheduled for June 9, 2009, the parties agreed to table discussion of the conflict and proceed with the mediation.

The parties were unable to resolve their disputes at the mediation, which took place on June 18, 2009, having been continued at Mr. Campbell's request. Thereafter, on July 9, 2009, Commonwealth sent a letter to the firm requesting that Polsinelli Shughart immediately withdraw from its representation of St. Johns. Counsel for Commonwealth informed the firm that it would not consent to waive the conflict or consent to Polsinelli Shughart's representation of St. Johns, adverse to Commonwealth, in this matter. After initially agreeing to withdraw, Polsinelli Shughart eventually informed Commonwealth that it would not voluntarily withdraw, and that the Court would have to order it to do so. Commonwealth filed the motion to disqualify on July 28, 2009.

5

**Legal Standards**

Local Rule 12.02 of the United States District Court for the Eastern District of Missouri adopts the "Code of Professional Responsibility adopted by the Supreme Court of Missouri." See E.D. Mo. Local Rule 12.02. The Supreme Court of Missouri adopted the Rules of Professional Conduct (Model Rules) effective January 1, 1986. See Mo. S. Ct. R. 4. This Court has determined that the local rule intends to apply the Model Rules. Gilmore v. Goedecke Co., No. 4:95-CV-2472 CDP (E.D. Mo. May 10, 1996); see also Harker v. Commissioner of Internal Revenue, 82 F.3d 806, 807 (8th Cir. 1996).

Motions to disqualify opposing counsel rest with the discretion of the district court. Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1154 (8th Cir. 2000) (citing Harker, 82 F.3d at 808). Because such motions are subject to abuse by opposing counsel, they are "subjected to particularly strict judicial scrutiny." Midwest Motor Sports v. Arctic Sales, Inc., 347 F.3d 693, 700-01 (8th Cir. 2003) (quoting Harker, 82 F.3d at 807). The party seeking disqualification carries a "heavy burden," but doubts should be resolved in favor of disqualification. Griffen by Freeland v. East Prairie, Mo. Reorg. Sch. Dist. No. 2, 945 F. Supp. 1251, 1253 (E.D. Mo. 1996) (citing Coffelt v. Shell, 577 F.2d 30, 32 (8th Cir. 1978) (per curiam)).

The Court is mindful that "disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing." Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982). "Disqualification often results in increased expenses, delay in resolution of the proceedings, and always deprives a party

of its choice of counsel." Kinzenbaw v. Case, L.L.C., 2004 WL 1146462, at *4 (N.D. Iowa May 20, 2004).

**Discussion**

    A. Current Representation

It is undisputed that Polsinelli Shughart formerly represented Commonwealth in various matters and currently represents (1) one of Commonwealth's sister companies in an unrelated suit, and (2) insured policyholders of Commonwealth's sister companies in two unrelated suits. Commonwealth argues that Polsinelli Shughart's representation of St. Johns is a concurrent conflict prohibited under Missouri Supreme Court Rule 4-1.7, but St. Johns argues that the representation is permitted under a comment to the rule. Therefore, the Court must determine whether Polsinelli Shughart's concurrent representation of St. Johns and Commonwealth's sister company and its sister companies' insureds violate the rules governing the professional conduct of attorneys.

Rule 4-1.7(a) prohibits a lawyer from representing a client if the representation involves a concurrent conflict of interest. A "concurrent conflict of interest exists if (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]" Mo. S. Ct. R. 4-1.7(a).

If a concurrent conflict exists, it does not matter that the Polsinelli Shughart lawyers in this case did not previously represent Commonwealth. Missouri Supreme Court Rule 4-1.10 provides that "while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 4-1.7 or 4-1.9, unless the prohibition is based on a personal interest of the prohibited lawyer." This rule of "imputed

disqualification . . . gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm." Mo. S. Ct. R. 4-1.10, cmt. 2. The rule is based on the "premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client" and "the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." Id. See Kahn v. Kahn, 846 S.W.2d 219, 224-25 (Mo. Ct. App. 1993) (holding that no partner of an attorney could knowingly represent a client if the attorney himself would be prohibited from doing so by reason of conflict of interest).

St. Johns argues that Polsinelli Shughart's representation of Commonwealth's related company and the related companies' policyholders is not a concurrent conflict prohibited under Rule 4-1.7 because (1) its representation of Commonwealth has ended, (2) Commonwealth is only loosely related to Lawyers Title Insurance Company and Chicago Title Insurance Company, (3) the suits are unrelated, and (4) in two of the suits, Polsinelli Shughart represents the related companies' policyholders, not the related companies themselves. St. Johns asserts that under Comment 34 to Rule 4-1.7, a lawyer for an organization is not barred from representing a party adverse to an affiliate of the organization in an unrelated matter.

Comment 34 to Rule 4-1.7 provides:

> [A] lawyer for an organization is not barred from accepting representation adverse to an affiliate in an unrelated matter, unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's representation of the other client.

Mo. S. Ct. R. 4-1.7, Comment 34.

"An attorney is obligated to maintain a paramount duty of loyalty to a client." Goss Graphics Sys., Inc. v. Man Roland Druckmaschinein Aktiengesellschaft, 2000 WL 34031492, at *5 (N.D. Iowa May 25, 2000). "Purported conflicts in dual representation cases are subject to stricter scrutiny than cases where an attorney seeks to represent the adversary of a former client." Id. at *6 (quoted case omitted). "Even though the simultaneous representations may have nothing in common, and there is no risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be required." Id. (quoted case omitted). "Indeed, in all but a few cases, a per se rule of disqualification exists." Id. "The propriety of an attorney's conduct in concurrently representing adverse clients is measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients." Kinzenbaw, 2004 WL 1146462, at *4 (quoting E.E.O.C. v. Orson H. Gygi Co., Inc., 749 F.2d 620, 622 (10th Cir. 1984)) (internal punctuation and quotation marks omitted).

In the instant case, Polsinelli Shughart's concurrent representation of St. Johns in this action and Commonwealth's sister companies and their insureds in unrelated actions presents a conflict of interest. The conflict is based on the circumstances of Fidelity's centralized oversight of litigation involving its affiliate companies according to a common set of established procedures and practices which apply to all litigation concerning the affiliated companies and their policyholders, Fidelity's retention of hands-on authority with respect to matters such as settlement, and its expectation and understanding that its outside counsel will avoid representation adverse to Fidelity's affiliates unless a waiver is previously obtained. These circumstances establish that Fidelity, Commonwealth, and its sister companies should all be considered clients of Polsinelli Shughart within the context of Rule 4-1.7, and are owed a duty of loyalty by Polsinelli Shughart, which also owes a duty of Loyalty to St.

Johns. Because Commonwealth refuses to consent to the concurrent representation, Polsinelli Shughart must be disqualified from representing St. Johns in this matter.[3]

B. Former Representation

In addition, Commonwealth asserts that Polsinelli Shughart's prior representation of Commonwealth and its sister companies in at least seven matters also creates a direct conflict of interest, because those matters were substantially related to the current matter. Commonwealth argues that in light of the common nature of the Fidelity companies' pre-litigation claims-handling procedures and general litigation strategies, Polsinelli Shughart's prior representation of Commonwealth and its sister companies, standing alone, is sufficient to warrant disqualification. Commonwealth asserts that when the prior representation is considered in addition to Polsinelli Shughart's current representation of related companies and their policyholders, the conflict that prevents Polsinelli Shughart from representing St. Johns in this matter is even more clear.

The substantial relationship test governs claims for disqualification based on former representation. Griffen, 945 F. Supp. at 1253; Mo. S. Ct. R. 4-1.9(a). The two-part test requires the party seeking disqualification to show that (1) an attorney-client relationship existed, and (2) there is a substantial relationship between the subject matter of the present and former representations. Griffen, id. (citing Fred Weber, Inc. v. Shell Oil Co., 566 F.2d 602, 607-08 & 608 n.7 (8th Cir. 1977),

---

[3]Polsinelli Shughart's attempt to discount the actions in which it represents the insured policyholders of Commonwealth's sister companies is unavailing. The Missouri Supreme Court has stated that when an insurance company retains counsel for its insured, the attorney may be considered to have both the insurance company and the insured as clients. See In re Allstate Ins. Co., 722 S.W.2d 947, 952 (Mo. 1987) (en banc) (citing Helm v. Inter-Insurance Exch. for Auto. Club of Mo., 192 S.W.2d 417, 420 (Mo. 1946) (en banc)). The facts of this case warrant such a conclusion, where Fidelity's in-house counsel remain substantively involved in major decisions regarding the defense of claims brought against its insured policyholders, including decisions regarding the compromise or settlement of those claims.

cert. denied, 436 U.S. 905 (1978), overruled on different grounds, In re Multi-Piece Rim Products Liability Litig., 612 F.2d 377 (8th Cir. 1980)). "The substantial relationship test protects the client's interest in both loyalty and confidentiality." Griffen, 945 F. Supp. at 1253. "The provision of legal advice on a substantially related matter by itself requires disqualification." Id.

The first part of the test is met in this case because there is no dispute that an attorney-client relationship previously existed between Commonwealth and Polsinelli Shughart. As a result, an irrebuttable presumption exists that confidences were disclosed. See id. at 1254 (citing Fred Weber, 556 F.2d at 608). The issue is whether the previous representation was on a substantially related matter.

The Missouri Supreme Court has indicated that the "substantially related" test does not require the prior representation to have been part of the same case or controversy, or that the issues involved in the same representation be identical or essentially the same. In re Carey, 89 S.W.3d 477, 493 (Mo. 2002) (en banc). Rather, the inquiry is whether it is "reasonable to infer" that confidential information would have been given to the lawyer during the prior representation and, if so, whether that information is "relevant" to issues raised in the current litigation. Id. at 494.

The Missouri Supreme Court examines a non-exclusive list of six factors in determining whether it is reasonable to infer that a substantial relationship exists. The factors are:

> (1) the case involved the same client and the matters or transactions in question are relatively interconnected or reveal the client's pattern of conduct; (2) the lawyer had interviewed a witness who was key in both cases; (3) the lawyer's knowledge of a former client's negotiation strategies was relevant; (4) the commonality of witnesses, legal theories, business practices of the client, and location of the client were significant; (5) a common subject matter, issues and causes of action existed; and (6) information existed on the former client's ability to satisfy debts and its possible defense and negotiation strategies.

11

In re Carey, 89 S.W.3d at 494 (quoting Chrispens v. Coastal Refining & Mktg., Inc., 897 P.2d 104, 112 (Kan. 1995)). One factor, if significant enough, can establish that the subsequent case is substantially related. Id.

In Carey, the Missouri Supreme Court examined the six factors and found that the attorneys' prior representation of Chrysler Corporation at another law firm, defending products liability class action claims concerning minivan door latches, was substantially related to their current representation of a personal injury plaintiff against Chrysler concerning minivan anti-lock brakes. The court found that the attorneys had gained access to a wealth of highly confidential information about how Chrysler defended class actions at their prior firm, and that there was an "identity of process" in terms of how Chrysler defended class actions, regardless of the nature of the component involved. Id. at 494.

The court concluded that despite differences in the lawsuits, by representing a plaintiff in a products liability class action suit against Chrysler, the attorneys represented another person in a substantially related matter that was materially adverse to their former client in violation of Rule 4-1.9:

> Upon a close examination of the facts and issues surrounding the respondents' representation of Chrysler, the fact that [the attorneys] defended Chrysler in product liability class action claims involving Chrysler's minivan overshadows the fact that different automotive parts were at issue. <u>Respondents' work at [the prior law firm] allowed them access to information and strategy considerations that could not be turned fairly against their former client after changing employment. Although these lawsuits concerned different parts, the issues in the lawsuits and Chrysler's defense strategies were shown to be unavoidably linked.</u> The expertise that [the attorneys] developed at Chrysler's expense and the confidences shared with them by Chrysler cannot be used by respondents to harm their former client.

Carey, 89 S.W.3d at 495 (emphasis added).

In this case, Polsinelli Shughart previously represented Commonwealth in several matters, at least some of which involved title insurance coverage disputes and the defense of bad faith claims. Van Rooy Decl. of July 28, 2009, at ¶ 3. Polsinelli Shughart now represents St. Johns, which is suing Commonwealth on counterclaims for breach of a title insurance contract, statutory vexatious refusal to pay, and negligence in the issuance of the title policies at issue. Polsinelli Shughart's prior experience representing Commonwealth in insurance coverage disputes, and its knowledge of the common nature of the Fidelity companies' pre-litigation claims-handling procedures and general litigation strategies and practices, gives it access to Commonwealth's confidential information and strategies. The information and strategies Polsinelli Shughart gained in its prior representation of Commonwealth appear to be relevant to issues in the current matter, based on the similar subject matter of this action and the prior suits. The information and expertise Polsinelli Shughart developed in its prior representation of Commonwealth cannot fairly be used against Commonwealth in this action.

The Court concludes that by representing St. Johns in this matter, Polsinelli Shughart is representing another entity in a substantially related matter that is materially adverse to its former client Commonwealth, in violation of Missouri Supreme Court Rule 4-1.9. The motion to disqualify should therefore be granted for this additional reason.

C. Timeliness

St. Johns asserts that Commonwealth is using the motion to disqualify as a strategic tool to deprive it of its chosen counsel and drive up its litigation costs, as evidenced by the fact that it waited a month and a half after learning of the claimed conflict to file it. St. Johns further asserts that Commonwealth has waived its objection to the conflict. This argument is without merit.

13

As set forth in the parties' memoranda and the Declaration of Mark T. Davenport, the conflict arose in February 2009 when the Shughart and Polsinelli firms merged. The conflict was not brought to Commonwealth's attention by Polsinelli Shughart. Commonwealth discovered the conflict independently in May 2009, and Commonwealth's attorney Mr. Davenport brought it to the attention of St. Johns' counsel, Mr. Campbell, on May 13, 2009. The two discussed the issue by telephone on May 13, 2009, and Mr. Campbell stated that St. Johns would likely contest the issue. At that point, there were no depositions or significant discovery scheduled, and the parties had scheduled a court-ordered mediation for June 9, 2009. Messrs. Campbell and Davenport agreed to table discussion of the conflict issue until after the mediation, in the hope the case might settle and the issue would be moot. The mediation was delayed at Mr. Campbell's request until June 18, 2009, and was ultimately unsuccessful. The next day, Mr. Davenport e-mailed Mr. Campbell and reminded him of the need to address the conflict issue. After further discussions to resolve the conflict issue proved futile, Mr. Davenport formally requested by letter dated July 9, 2009 that Polsinelli Shughart withdraw from representing St. Johns in this matter, and stated that Commonwealth would file a motion to disqualify on July 17, 2009 if the firm had not voluntarily withdrawn by then. The motion to disqualify was filed on July 28, 2009.

St. Johns offers no authority to support its assertion that the six-week period described above could be considered an unreasonable delay under these circumstances.[4] This is particularly true where a significant portion of the claimed delay occurred because the parties mutually agreed to table

---

[4] The sole case cited by St. Johns concerned a party who knew of a conflict from the beginning of the suit but waited over a year and a half to file a motion to disqualify, two weeks after the case was tried to a conclusion. See Terre Du Lac Property Owners' Ass'n, Inc. v. Shrum, 661 S.W.2d 45, 48 (Mo. Ct. App. 1983). The circumstances of the instant case are readily distinguishable.

14

discussion of the conflict issue until after mediation, which was a reasonable decision, and then St. Johns requested that the mediation be rescheduled. Nothing in the record leads this Court to believe that Commonwealth has attempted to abuse the motion to disqualify as a strategic tool in this matter. No waiver of the objection has occurred.

D. Undue Hardship

Finally, St. Johns argues that it will suffer undue hardship if the motion to disqualify is granted because it has already incurred significant attorney's fees in this action, new counsel would be required to "spend numerous hours getting caught up," and the long-standing relationship between it and Polsinelli Shughart could not be duplicated by new counsel.

The Court is aware that "[d]isqualification often results in increased expenses, delay in resolution of the proceedings, and always deprives a party of its choice of counsel." Kinzenbaw, 2004 WL 1146462, at *4. It is unfortunate that St. Johns can no longer be represented by Polsinelli Shughart in this matter and will incur additional attorney's fees, but it is an unavoidable result under the governing ethical rules and the circumstances presented by this case.

Accordingly,

**IT IS HEREBY ORDERED** that Commonwealth Land Title Insurance Company's Motion to Disqualify counsel for defendant St. Johns Bank & Trust Company is **GRANTED**. [Doc. 23]

**IT IS FURTHER ORDERED** that St. Johns Bank & Trust Company shall obtain substitute counsel by **November 5, 2009**.

**IT IS FURTHER ORDERED** that by **November 23, 2009**, plaintiff's counsel and defendant's new counsel shall jointly file with the Court a proposed schedule for modification of the Case Management Order.

  CHARLES A. SHAW
  UNITED STATES DISTRICT JUDGE

Dated this  22nd  day of September, 2009.